# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## MONROE DIVISION

| | |
|---|---|
| **BRIAN PATRICK HARGISS** | **CASE NO.  3:22-CV-00886 LEAD** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **PRINCETON EXCESS & SURPLUS LINES INSURANCE CO** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

## MEMORANDUM ORDER

Pending before the Court are five motions for summary judgment.[1] These motions seek

summary judgment on three coverage issues: (1) whether Princeton Excess and Surplus Lines

Insurance Company ("PESLIC" or "Defendant") received written notice in accordance with the

policy terms of Louisiana Sheriff Law Enforcement Program's ("LSLEP") insurance plan; (2)

---

[1] *Motion 1 and associated filings*: Motion on Behalf of Brian Hargiss for Summary Judgment [Doc. No. 72]; PESLIC's Opposition to Brian Hargiss's Motion for Summary Judgment [Doc. No. 103]; and Hargiss Memorandum in Reply to Defendant's Opposition to Hargiss Motion for Summary Judgment [Doc. No. 109].
*Motion 2 and associated filings*: PESLIC's Motion for Summary Judgment on Claim Made and Reported Issue [Doc. No. 75]; Opposition to PESLIC's Motion for Summary Judgment on Claims Made Issue [Doc. No. 96]; PESLIC's Reply to Hargiss's Opposition to Motion for Summary Judgment on Claims Made Issue [Doc. No. 101]; LSLEP's and Gilley's Memorandum in Opposition to Motion for Summary Judgment of PESLIC on Claims Made Issue [Doc. No. 104]; and PESLIC's Reply to LSLEP's Opposition to Motion for Summary Judgment on Claims Made Issue [Doc. No. 113].
*Motion 3 and associated filings*: PESLIC's Alternative Motion for Summary Judgment on Criminal Act Exclusion [Doc. No. 76]; Memorandum Opposing PESLIC's Motion for Summary Judgment Based on Criminal Act Exclusion [Doc. No. 93-1]; PESLIC's Reply in Support of Alternative Motion for Summary Judgment on Criminal Act Exclusion [Doc. No. 100]; LSLEP's and Gilley's Memorandum in Opposition to Alternative Motion for Summary Judgment of PESLIC on Criminal Acts Exclusion [Doc. No. 105]; and PESLIC's Reply to LSLEP's Opposition to Alternative Motion for Summary Judgment on Criminal Act Exclusion [Doc. No. 115].
*Motion 4 and associated filings*: PESLIC's Alternative Motion for Summary Judgment on Lack of Cooperation Issue [Doc. No. 78]; Opposition to PESLIC's Breach of Cooperation Clause Motion for Summary Judgment [Doc. No. 91]; PESLIC's Reply to Hargiss's Opposition to Alternative Motion for Summary Judgment on Breach of Cooperation Clause Issue [Doc. No. 94]; LSLEP's and Gilley's Memorandum in Opposition to Motion for Summary Judgment of PESLIC on Breach of Cooperation Clause Issue [Doc. No. 106]; and PESLIC's Reply to LSLEP's Opposition to Alternative Motion for Summary Judgment on Breach of Cooperation Clause Issue [Doc. No. 114].
*Motion 5 and associated filings*: LSLEP's and Gilley's Motion for Summary Judgment [Doc. No. 81]; PESLIC's Opposition to LSLEP's Motion for Summary Judgment [Doc. No. 102]; and LSLEP's and Gilley's Reply Memorandum in Support of Motion for Summary Judgment [Doc. No. 118].

whether the criminal act exclusion in this policy excludes coverage in this case; and (3) whether LSLEP breached the terms of the cooperation clause.

This Memorandum Order will focus only on whether PESLIC received written notice in accordance with the policy terms of the insurance plan. Specifically, it will address the Motion on Behalf of Brian Hargiss for Summary Judgment [Doc. No. 72], PESLIC's Motion for Summary Judgment on Claim Made and Reported Issue [Doc. No. 75], and LSLEP's and Sheriff Gary Gilley's ("Gilley") Motion for Summary Judgment [Doc. No. 81]. Further, although PESLIC's Motion discusses the cooperation clause and the criminal act exclusion, the Court will not address those arguments in this Memorandum Order. These arguments will instead be addressed when the Court resolves PESLIC's pending motions [Doc. Nos. 76 and 78] on those issues.

Having considered the Motions, Oppositions, and Replies, and for the reasons set forth below, **IT IS ORDERED** that the Motion on Behalf of Brian Hargiss for Summary Judgment [Doc. No. 72] and LSLEP's and Gilley's Motion for Summary Judgment [Doc. No. 81] are **GRANTED in part** and **DENIED in PART**.

**IT IS FURTHER ORDERED** that PESLIC's Motion for Summary Judgment on Claim Made and Reported Issue [Doc. No. 75] is **DENIED** in its entirety.

## I.        FACTS AND PROCEDURAL BACKGROUND

This consolidated case arises from PESLIC's decision to not pay a judgment secured by Brian Hargiss ("Hargiss") against LSLEP, Gilley, and other deputies, all of whom were insured under a PESLIC insurance policy.[2]

---

[2] [Doc. No. 1]; [Doc. No. 57].

### a. The *LaSalle* Litigation

On November 26, 2017, Richland Parish Sheriff's deputies arrested Hargiss for disturbing the peace and booked him into the Richland Parish Detention Center ("RPDC").[3] At RPDC, Deputy James T. Simmons ("Simmons") struck Hargiss in the face in the presence of Deputies Darius Williams ("Williams") and Leighton Linder ("Linder").[4] This strike knocked Hargiss unconscious and broke his zygomatic arch.[5] On December 4, 2017, the Richland Parish Sheriff's Office terminated Simmons.[6] That same day, Simmons was arrested for battery.[7]

On November 8, 2018, Hargiss filed a complaint in the United States District Court for the Western District of Louisiana ("the *LaSalle* litigation") for damages against Gilley and other employees of the Richland Parish Sheriff's Office.[8] On May 15, 2018, Simmons pled guilty to the battery charge.[9] On July 18, 2019, Hargiss filed an amended complaint that expressly alleged Simmons's assault of Hargiss and named Williams, Linder, Simmons, and Gilley as defendants.[10]

On October 13, 2021, the Jury rendered a verdict in favor of Hargiss.[11] On October 21, 2021, the Court entered a judgment against Gilley, Williams, Linder, and Simmons.[12] On January 11, 2022, after the Court ruled on post-trial motions and the judgment became final, LSLEP requested a payment of $421,819.96 from PESLIC, its insurance carrier.[13] Ray Bonnani ("Bonnani") denied coverage on behalf of PESLIC.[14]

---

[3] [Doc. No. 72-1, ¶ 1]; [Doc. No. 75-2, ¶ 2]; [Doc. No. 81-1, ¶ 9].
[4] [Doc. No. 72-1, ¶ 2]; [Doc. No. 75-2, ¶ 3].
[5] [Doc. No. 75-2, ¶ 3].
[6] [Doc. No. 75-2, ¶ 4].
[7] [Doc. No. 75-2, ¶ 5].
[8] [Doc. No. 72-1, ¶ 3]; [Doc. No. 75-2, ¶ 7]; [Doc. No. 81-1, ¶ 1]; [Civil Action No. 3:18-cv-01466].
[9] [Doc. No. 75-2, ¶ 6].
[10] [Doc. No. 75-2, ¶ 11].
[11] [Civil Action No. 3:18-cv-01466, Doc. No. 192].
[12] [Civil Action No. 3:18-cv-01466, Doc. No. 201].
[13] [Doc. No. 75-2, ¶ 13]; [Doc. No. 81-1, ¶¶ 15, 45].
[14] [Doc. No. 81-1, ¶ 7].

### b.  The PESLIC Insurance Policy

Gilley, the Sheriff of Richland Parish, was a member of LSLEP.[15] LSLEP is a statutorily authorized interlocal risk management agency formed by sheriffs to pool their public liability risks.[16] PESLIC issued Policy No. N1-A3-RL-00063-09 ("PESLIC Policy") to LSLEP.[17] The PESLIC Policy identified LSLEP and "those Sheriffs in the State of Louisiana specifically scheduled in this Policy together with their successors as Sheriff" as the Named Insureds.[18] Schedule C named the Richland Parish Sheriff as an insured.[19] Therefore, Gilley is an insured.

The PESLIC Policy contained a Retained Limit of $100,000.00 for each occurrence or wrongful act.[20] The PESLIC Policy provided General Liability Coverage, Wrongful Act Liability Coverage, and Law Enforcement Activities Coverage.[21] For coverage to vest, LSLEP had to comply with the PESLIC Policy's reporting requirements.[22] The PESLIC Policy was active from July 1, 2018, to July 1, 2019, and had an extended reporting period that ended on August 30, 2019.[23]

### c.  Administration of the Hargiss Claim

The PESLIC Policy identified Mount Claims Services, LLC, d/b/a Paramount Claims Service ("Paramount") as the claims administrator for LSLEP.[24] Tracy LeDoux ("LeDoux"), an employee at Paramount, acted as the claims manager handling the Hargiss claim on behalf of

---

[15] [Doc. No. 72-1, ¶ 5]; [Doc. No. 81-1, ¶ 3].
[16] [Doc. No. 81-1, ¶ 2].
[17] [Doc. No. 72-1, ¶ 6]; [Doc. No. 81-1, ¶¶ 4, 12].
[18] [Doc. No. 75-2, ¶ 1].
[19] [Doc. No. 75-2, ¶ 1].
[20] [Doc. No. 75-2, ¶ 1]; [Doc. No. 81-1, ¶ 12].
[21] [Doc. No. 81-1, ¶ 21].
[22] [Doc. No. 81-1, ¶ 22].
[23] [Doc. No. 75-2, ¶ 15]; [Doc. No. 81-1, ¶ 20].
[24] [Doc. No. 72-1, ¶ 9]; [Doc. No. 81-1, ¶ 5].

LSLEP.[25] Munich Re is the claims administrator for PESLIC.[26] Michael Duffy ("Duffy") worked for Munich Re as a claims handler on the Hargiss claim until approximately April 2020.[27] After April 2020, Bonnani took over Duffy's duties. On December 9, 2018, Gilley informed Paramount that Hargiss had asserted a claim against him in the *LaSalle* litigation ("the Hargiss claim").[28]

Paramount regularly sent PESLIC automatically generated monthly spreadsheets entitled "Loss Runs."[29] The Loss Runs detail losses reported throughout the term of the PESLIC Policy and include losses from as early as 2003.[30] The Loss Runs list more than 1,500 incidents against multiple sheriffs.[31] While the Loss Runs are long, they can be sorted, and newer claims are located at the bottom of the report.[32]

Plaintiffs assert that the Loss Runs from January 2019 to August 2019, included an entry for the Hargiss claim ("Hargiss Entry").[33] The earliest report produced in discovery was the May 1, 2019, Loss Runs.[34] The Loss Runs from May 2019 to August 2019, contain the Hargiss entry, and each entry is nearly identical.[35] The Hargiss entry disclosed  (1) the identity of the claimant, (2) the date of Hargiss's loss, (3) the date of the first report, (4) the nature of the claim, (5) the identity of defendant's counsel, (6) a settlement reserve of $2,500.00, and (7) other miscellaneous information.[36]

---

[25] [Doc. No. 81-1, ¶ 5].
[26] [Doc. No. 81-1, ¶¶ 8, 30].
[27] [Doc. No. 81-1, ¶¶ 6-7, 30].
[28] [Doc. No. 75-2, ¶ 8]; [Doc. No. 78-2, ¶ 9]; [Doc. No. 81-1, ¶ 27].
[29] [Doc. No. 75-2, ¶ 16]; [Doc. No. 81-1, ¶ 32].
[30] [Doc. No. 72-1, ¶ 14].
[31] [Doc. No. 75-2, ¶ 20].
[32] [Doc. No. 81-1, ¶ 41].
[33] [Doc. No. 75-2, ¶ 16].
[34] [Doc. No. 81-1, ¶ 41].
[35] [Doc. No. 75-2, ¶ 18].
[36] [Doc. No. 72-1, ¶ 15]; [Doc. No. 81-1, ¶ 35].

Prior to January 11, 2022, these Loss Runs were the only source of information PESLIC received regarding the Hargiss claim.[37] On January 11, 2022, LSLEP requested a payment of $421,819.96 from PESLIC.[38] PESLIC received a full carrier report at this time.[39] After receiving LSLEP's request for payment, PESLIC denied coverage.[40]

### d.  The Pending Litigation

On February 25, 2022, Hargiss filed suit against PESLIC in state court to recover the final judgment ordered in the *LaSalle* litigation.[41] On April 4, 2022, PESLIC removed Hargiss's case to this Court.[42] On April 8, 2022, LSLEP and Gilley filed suit against PESLIC seeking damages and declaratory relief.[43] On May 15, 2023, the Court consolidated these two actions.[44]

All parties to this action have filed motions for summary judgment. In this Memorandum Order, the Court considers only the motions related to whether PESLIC received notice in accordance with the policy terms. Hargiss, LSLEP, and Gilley (collectively, "Plaintiffs") assert that they complied with the notification provisions, and PESLIC is thus required to indemnify LSLEP. Conversely, PESLIC argues that LSLEP did not comply with the notification requirements, so PESLIC is not required to indemnify LSLEP.

The issues have been briefed, and the Court is prepared to rule.

---

[37] [Doc. No. 75-2, ¶ 9, 16]
[38] [Doc. No. 75-2, ¶ 13]; [Doc. No. 81-1, ¶¶ 15, 45].
[39] [Doc. No. 75-2, ¶ 14].
[40] [Doc. No. 81-1, ¶ 7].
[41] [Doc. No. 2].
[42] [Doc. No. 1].
[43] [Civil Action No. 3:22-cv-00952, Doc. No. 1].
[44] [Doc. No. 60].

## II.        LAW AND ANALYSIS

### a.  Summary Judgment Standard

Under FED. R. CIV. P. 56(a), "[a] party may move for summary judgment, [and] [t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." For cross-motions for summary judgment, the Court reviews "each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Ford Motor Co. v. Texas Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001). "If the moving party meets the initial burden of showing there is no genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, 738 F.3d 703, 706 (5th Cir. 2013) (internal quotation marks and citation omitted); *see also* Fed. R. Civ. P. 56(c)(1). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

"[A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (*citing Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. "A non-conclusory affidavit can create genuine issues of material fact that preclude summary judgment, even if the affidavit is self-serving and uncorroborated." *Lester v. Wells Fargo Bank,*

*N.A.*, 805 F. App'x 288, 291 (5th Cir.  2020) (citations omitted). Additionally, "a district court has somewhat greater discretion to consider what weight it will accord the evidence in a bench trial than in a jury trial." *Matter of Placid Oil Co.*, 932 F.2d 394, 397 (5th Cir. 1991).

Summary judgment is appropriate when the evidence before a court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  No genuine dispute as to a material fact exists when a party fails "to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323. For pending cross-motions for summary judgment, "[i]f there is no genuine issue and one of the parties is entitled to prevail as a matter of law, the court may render summary judgment." *Shaw Constructors v. ICF Kaiser Engineers, Inc.*, 395 F.3d 533, 539 (5th Cir. 2004). Further, "[s]ummary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts …, under which coverage could be afforded." *Reynolds v. Select Properties, Ltd.*, 634 So. 2d 1180, 1183 (La. 1994).

### b.  Interpretation of Insurance Policies

In an action that requires "the interpretation of insurance policies issued in Louisiana, Louisiana substantive law governs our decisions." *Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir. 2003). Under Louisiana law, "[a]n insurance policy is an aleatory contract subject to the same basic interpretive rules as any other contract." *Doerr v. Mobil Oil Corp.*, 774 So. 2d 119, 123 (La. 12/19/00), *opinion corrected on reh'g*, 782 So. 2d 573 (La.

3/16/01). "[A]n insurance contract must be interpreted as a whole." *F.D.I.C. v. Booth*, 82 F.3d 670, 674 (5th Cir. 1996). When interpreting insurance contracts, the Court's function is to determine the parties' common intent. La. Civ. Code Ann. art. 2045. *See also Doerr*, 774 So. 2d at 124.

The Court will examine the insurance policy itself to find the parties' intent. *Id.* "The words of a contract must be given their generally prevailing meaning." La. Civ. Code Ann. art. 2047. Additionally, "[w]ords susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract." La. Civ. Code Ann. art. 2048. Similarly, "[a] provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective." La. Civ. Code Ann. art. 2049.

"When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code Ann. art. 2046. A contract is ambiguous "on the issue of intent when either it lacks a provision bearing on that issue, the terms of a written contract are susceptible to more than one interpretation, there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed." *Campbell v. Melton*, 817 So. 2d 69, 75 (La. 5/14/02). Whether provisions are ambiguous is a question of law. *CLK Company, LLC v. CXY Energy, Inc.*, 972 So. 2d 1280, 1286 (La. App. 3d Cir. 2007). Further, "[a]n insurance contract … should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or to restrict its provisions beyond what is reasonably contemplated by unambiguous terms or achieve an absurd conclusion." *Cadwallader v. Allstate Ins. Co*., 848 So. 2d 577, 580 (La. 6/27/03). In other words, the court is not authorized to "exercise … inventive powers to create an ambiguity where none exists or [to make] a new contract when the terms express with sufficient clearness the parties' intent." *Id.*

"A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties." La. Civ. Code Ann. art. 2053. Put differently, the Court may only look to extrinsic evidence when the policy's language is ambiguous or absurd. *Doerr*, 774 So. 2d at 124. Further, the general rule is that "any ambiguities within the policy must be construed in favor of the insured to effect, not deny, coverage." *Id*. "[E]quivocal provisions seeking to narrow an insurer's obligation are strictly construed against the insurer." *Cadwallader*, 848 So. 2d at 580. However, this "strict construction principle applies only if the ambiguous policy provision is susceptible to two or more *reasonable* interpretations." *Id*. (emphasis original). As for the policy itself, "[w]hen determining whether or not a policy affords coverage for an incident, it is the burden of the insured to prove the incident falls within the policy's terms." *Doerr*, 774 So. 2d at 124. However, "the insurer bears the burden of proving the applicability of an exclusionary clause within a policy." *Id*.

The Court shall now apply these principles to the PESLIC Policy to determine whether LSLEP complied with its notification obligations.

### c.  Interpretation and Application of the Notification Obligations

PESLIC only provides indemnification where an insured can demonstrate the satisfaction of three requirements: (1) the occurrence takes place in the coverage territory; (2) the claim is "first made" against an insured during either the policy period or extended reporting period; and (3) PESLIC receives written notice in accordance with the reporting requirements set forth in the "Duties in the Event of an Accident, Occurrence, Wrongful Act or Claim" section prior to the end

of the extended reporting period.[45] Here, the parties only dispute whether PESLIC received "written notice."

The "Duties in the Event of an Accident, Occurrence, Wrongful Act or Claim" section reads as follows:

> 1. You must see to it that:
> a. We are notified in writing as soon as practicable once you have knowledge of any Accident, Occurrence, or Wrongful Act which may reasonably and subsequently give rise to a Claim being made against an Insured. Notice shall be deemed given as soon as practicable if it is given to us by the department or person to whom you have delegated such responsibility as soon as practicable after they have knowledge of such Accident, Occurrence, or Wrongful Act;
> b. If a Claim is made against an Insured which appears likely to involve indemnification by this policy, you must immediately record the specifics of the Claim and the date received and notify us in writing as soon as practicable. Notice shall be deemed given as soon as practicable if it is given to us by the department or person to whom you have delegated such responsibility as soon as practicable after they have knowledge of such Claim;
> c. At our request, we receive your assistance in the enforcement of any right against any person or organization which may be liable to an Insured because of injury or damage to which this insurance may also apply;
> d. We receive your full cooperation as stated in this policy; and
> e. We receive your full cooperation in the investigation, settlement, or defense of any Claim.[46]

Two provisions in this section directly deal with notification. Subsection (a) requires written notice when the insured has knowledge of an accident, wrongful act, or occurrence that may "reasonably and subsequently give rise to a Claim."[47] The PESLIC Policy defines a claim as "written or oral notice, including a Suit, demanding payment of money to compensate for damages."[48] Subsection

---

[45] [Doc. No. 72-5, p. 30].
[46] [Doc. No. 72-5, p. 10 (emphasis removed)].
[47] [Doc. No. 72-5, p. 10 (emphasis removed)].
[48] [Doc. No. 72-5, p. 11 (emphasis removed)].

(b) requires notification of the "specifics" in writing when "a Claim is made against an Insured which appears likely to involve indemnification."[49] The parties dispute what these notification provisions require.

PESLIC interprets subsections (a) and (b) as mutually exclusive notification provisions that are separately triggered depending on what the insured reports. PESLIC asserts that subsection (a) applies only where an insured reports an accident, wrongful act, or occurrence (collectively, "insured event") to PESLIC before that insured event has become a claim against the insured. PESLIC then asserts that subsection (b) applies where a claim, not an insured event, is reported. In other words, PESLIC interprets subsection (a) to only apply if an insured learns of an insured event and informs PESLIC *before* the injured party demands payment. But if the injured party has already demanded payment, the insured would be notifying PESLIC of a claim, and subsection (b) would apply. PESLIC concedes that the specifics are only required where a claim is likely to involve indemnification. However, PESLIC further asserts that its indemnification obligations can only be triggered upon the reporting of the specifics.

Based on this interpretation, PESLIC argues that LSLEP did not satisfy the notification requirements. LSLEP reported the claim after Hargiss filed suit. Therefore, subsection (b) would have applied. LSLEP provided notice by sending Loss Runs that included the Hargiss entry. PESLIC argues that these reports do not contain the "specifics" of a claim, and thus, LSLEP failed to comply with the notification requirements set forth in subsection (b). Accordingly, PESLIC asks the Court to find that LSLEP's failure to report the specifics prior to the expiration of the extended reporting period precludes indemnification of this claim.

---

[49] [Doc. No. 72-5, p. 10 (emphasis removed)].

Conversely, Plaintiffs assert that subsections (a) and (b) are not mutually exclusive and instead have notification requirements that trigger as the claim's valuation changes. In their view, subsection (a) applies when a claim does not appear likely to involve indemnification, and subsection (b) applies when a claim appears likely to involve indemnification. If a claim does not appear likely to involve indemnification, the insured can satisfy their notification requirements by providing PESLIC with written notice pursuant to subsection (a).

Plaintiffs argue that the Hargiss claim did not appear likely to involve indemnification, so LSLEP was not required to report the specifics. Plaintiffs then assert that the Loss Runs constitute written notice under subsection (a). Therefore, Plaintiffs ask the Court to find that LSLEP satisfied all applicable notification requirements, and thus, PESLIC must indemnify the Hargiss claim.

Whether indemnification is required ultimately depends on an analysis of several sub-issues. Specifically, the Court must determine (1) the requirements set forth in these notification provisions and (2) whether LSLEP complied with those requirements.

### a. Interpretation of the Notification Requirements

The PESLIC Policy is a claims-made-and-reported policy rather than an occurrence policy. Under an occurrence policy, coverage vests when the occurrence first happens regardless of when that occurrence is reported. *Anderson v. Ichinose*, 760 So. 2d 302, 305 (La. 9/8/99). Under a claims-made-and-reported policy, coverage vests when the insured both makes and reports a claim for the insured event. *Id*. Here, the PESLIC Policy requires that the insured both make and report the claim to PESLIC prior to the expiration of the extended reporting period. [50] Because PESLIC is only required to indemnify claims that are made and reported, the PESLIC Policy is a claims-made-and-reported policy.

---

[50] Insurance policy, p. 30

"[N]otice provisions are integral parts of claims made policies." *F.D.I.C. v. Mijalis*, 15 F.3d 1314, 1330 (5th Cir. 1994). Notice and reporting requirements "allow the insurer to 'close its books' on a policy at its expiration and therefore 'attain a level of predictability unattainable under standard occurrence policies.'" *Resol. Tr. Corp. v. Ayo*, 31 F.3d 285, 289 (5th Cir. 1994) (quoting *Mijalis*, 15 F.3d at 1330). "The purpose of the reporting requirement is to define the scope of coverage by providing a certain date after which an insurer knows it is no longer liable under the policy, and for this reason such reporting requirements are strictly construed." *Resol. Tr. Corp.*, 31 F.3d at 289. *See also Booth*, 82 F.3d at 678 (stating that "the notice requirement actually serves to aid the insured by extending claims-made coverage beyond the policy period. As such, we believe it should be strictly construed") (emphasis removed).

Here, the "Duties in the Event of an Accident, Occurrence, Wrongful Act or Claim" sets forth two notification requirements.[51] Once again, subsection (a) requires that PESLIC be "notified in writing as soon as practicable once you have knowledge of any Accident, Occurrence, or Wrongful Act which may reasonably and subsequently give rise to a Claim being made against an Insured."[52] Subsection (b) requires that where "a Claim is made against an Insured which appears likely to involve indemnification by this policy, you must immediately record the specifics of the Claim and the date received and notify us in writing."[53] Ultimately, the Court finds that the notification provisions here are ambiguous because both the plaintiffs' and defendant's interpretations are reasonable.

To begin, subsections (a) and (b) could be interpreted as imposing different notification requirements depending on when a claim is first reported to PESLIC. The Court could reasonably

---

[51] [Doc. No. 72-5, p. 10 (emphasis removed)].
[52] [Doc. No. 72-5, p. 10 (emphasis removed)].
[53] [Doc. No. 72-5, p. 10 (emphasis removed)].

read subsection (a) as only applying where an insured reports an insured event prior to an injured party making a claim. This interpretation reads the phrase "which may reasonably and subsequently give rise to a Claim"[54] as a direct limitation on when simple notice can be provided under the PESLIC Policy. If the insured instead reports a claim that has already been made against it, subsection (b) would apply. Subsection (b) requires the insured to report the specifics where a claim appears likely to involve indemnification. Where an insured fails to report the specifics of a claim, the insured bears the risk that PESLIC may not indemnify it. Such an interpretation would shift "the risk of a claim incurred but not made, as well as a claim made but not reported, … to the insured" and be in accordance with how this type of insurance policy functions. *Gorman v. City of Opelousas*, 148 So. 3d 888, 893 (La. 7/1/14). PESLIC's interpretation thus appears reasonable.

However, subsections (a) and (b) could also be interpreted as imposing different notification requirements depending on the likelihood of indemnification. When subsections (a) and (b) are read together, (b) appears to be triggered only when an insured determines a claim will likely involve indemnification. Subsection (b) does not define an insured's notification requirements when a claim does not appear likely to involve indemnification. Subsection (a) can be reasonably interpreted as applying in this situation. Subsection (a) facially indicates it only applies to insured events that may yet become claims, but the definitions for "wrongful act" and "occurrence" do not exclude lawsuits.[55] A lawsuit will also necessarily implicate a wrongful act, occurrence, or accident.

This interpretation is even more reasonable when the Court considers the Duties section in its entirety. The duties outlined in this section are all connected with "and."[56] This language

---

[54] [Doc. No. 72-5, p. 10 (emphasis removed)].
[55] [Doc. No. 72-5, p. 17, 21 (emphasis removed)].
[56] [Doc. No. 72-5, p. 10 (emphasis removed)].

indicates that an insured must comply with all the duties set forth in that section. If subsection (a) excludes all claims, then an insured must provide written notice before a claim is made against it to ensure full compliance with these duties. Failure to do so would mean that an insured automatically defaults on this notification duty. Such an interpretation ignores that an insured may not learn of an insured event until a claim has been made against it. Applying subsection (a)'s notification requirements to claims that do not appear likely to require indemnification best allows an insured to comply with this section's duties. This interpretation does not render any portion of the duties section meaningless.

Further, this interpretation would not convert this claims-made-and-reported policy into an occurrence policy. An insured is still required to both make and report a claim. If an insured fails to provide notice under subsection (a) when indemnification does not appear likely, then it has failed to make and report a claim. Similarly, if an insured provides written notice under subsection (a) but fails to provide the specifics of a claim when subsection (b) is triggered, the insured has failed to comply with its reporting requirements. In these situations, notice, and not merely an occurrence of some insured event, triggers the insurer's indemnification requirements. The scope of the bargained-for exchange between the insured and insurer is not altered by this interpretation.

This interpretation is also supported by the parties' prior course of dealings. Where a contractual provision is ambiguous, the Court must interpret that provision "in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties." La. Civ. Code Ann. art. 2053. Here, LSLEP provided evidence of PESLIC paying similarly reported claims.[57] For these six claims, the insured only provided notice of the claims through the Loss Runs prior to the

---

[57] [Doc. 81-1, ¶¶ 49-50].

expiration of the extended reporting period.[58] The insureds then later provided PESLIC with the "specifics" of the claims through a full carrier report after the expiration of the extended reporting period.[59] PESLIC indemnified the insureds for these claims.[60] The relevant notification provisions for these policies were identical to the PESLIC Policy.[61]

Certainly, providing coverage in these cases does not prevent PESLIC from raising notification as a defense in this claim. However, PESLIC's treatment of these claims suggests PESLIC previously interpreted its notification provisions to allow written notice to vest coverage for reported claims that did not appear likely to involve indemnification prior to the expiration of the reporting period. Such a finding strengthens the Court's conclusion that Plaintiffs' interpretation of the PESLIC Policy is reasonable.

In sum, the PESLIC Policy's notification provisions can be reasonably interpreted in more than one way, making the provisions ambiguous.[62] Because the provisions are ambiguous, the Court must employ the meaning that provides coverage.[63] La. Civ. Code Ann. art. 2049. Here, only the Plaintiff's interpretation provides coverage. The Plaintiffs' proffered interpretation is also consistent with how PESLIC handled some claims in the past. Under this interpretation, the applicability of subsection (a) or (b) depends on whether a claim is likely to require indemnification. If a claim does not appear likely to involve indemnification, an insured can

---

[58] [Doc. 81-1, ¶ 50].

[59] [Doc. 81-1, ¶ 50].

[60] [Doc. 81-1, ¶ 50].

[61] [Doc. 81-1, ¶ 51].

[62] Further, because Defendant's interpretation was also reasonable, the Court finds that PESLIC's denial of coverage did not violate La. R.S. 22:1973 and La. R.S. 22:1892. Adopting and arguing this interpretation was not a violation of good faith and fair dealing. Nor was this interpretation arbitrary, capricious, or without probable cause.

[63] The Court notes that this interpretation is in line with the "strict construction" requirements imposed by claims-made-and-reported policies. These provisions must be strictly construed to ensure that an insured can define the scope of its policy. The Plaintiffs' interpretation does not unnecessarily broaden the scope of claims, nor does it change how these provisions typically function because an insured must still make and report a claim. The mere occurrence of an act is not the trigger for coverage under this provision. This interpretation simply defines what triggers the insured's obligation to report the specifics.

comply with the notification requirements by providing PESLIC with written notice under subsection (a). If a claim does appear likely to involve indemnification, the insured must provide PESLIC with the specifics of the claim under subsection (b).

Finally, the Court must determine the meaning of "written notice" for subsection (a) and "specifics" for subsection (b). Neither term is defined in the PESLIC Policy. Based on a plain reading of these terms, the Court finds that "written notice" requires only that the insured inform PESLIC of the claim in writing. Such a finding is strengthened by PESLIC's use of the term "specifics" in subsection (b). The exclusive use of this term in subsection (b) implies that no specifics are required for notice under subsection (a). The Court further finds that notice of the "specifics of the claim" is provided through the full carrier report. LeDoux, the claims handler for Paramount, identified this full carrier report as notice of the "specifics of the claim."[64] No party disputes this definition. This definition is reasonable, especially considering the parties' prior course of dealings. Accordingly, the Court finds that notification under subsection (b) is only satisfied where the insured provides PESLIC with a full carrier report.

### b. Application of the Notification Requirements

The Court must now determine which subsection applied to the Hargiss claim and whether LSLEP complied with the requirements. LSLEP needed to provide notice to PESLIC prior to the expiration of the extended reporting period on August 30, 2019. As discussed above, if the claim appeared likely to involve indemnification by August 30, 2019, then LSLEP would have needed to provide PESLIC with the specifics of the claim. If, however, the claim did not appear likely to involve indemnification, written notice to PESLIC would suffice. The timeline below summarizes the relevant events:

---

[64] [Doc. No. 81-7, Deposition of Tracy LeDoux, p. 108-109].

18

| DATE | EVENT |
|---|---|
| **November 26, 2017** | Hargiss is arrested and booked into RPDC. Simmons strikes Hargiss in the presence of Williams and Linder. |
| **December 4, 2017** | Richland Parish Sheriff's Office terminates Simmons, and Simmons is arrested for battery. |
| **November 8, 2018** | Hargiss files his complaint. |
| **December 9, 2018** | Gilley informs Paramount of the *LaSalle* litigation. |
| **January 2019 – April 2019** | Paramount allegedly sends PESLIC Loss Runs with the Hargiss entry. |
| **May 1, 2019** | PESLIC receives Loss Runs with the Hargiss entry. |
| **May 15, 2019** | Simmons pleads guilty to battery charge. |
| **July 18, 2019** | Hargiss files an amended complaint, expressly alleging Simmons's assault and naming Williams, Linder, Simmons, and Gilley as defendants. |
| **August 30, 2019** | Extended reporting period for PESLIC policy ends. |

Both Hargiss and LSLEP argue that the claim did not appear likely to involve indemnification and thus the specifics did not need to be reported. Plaintiffs rely on the testimony of LeDoux and the Loss Runs. The Loss Runs indicate that the claim had a settlement reserve of

$2,500.00, and this value was not raised until well after the close of the extended reporting period.[65] Further, LeDoux, the claims handler for Paramount, testified that she "did not believe a verdict in favor of Brian Hargiss would exceed $100,000."[66] The Paramount claims handler is responsible for determining whether a claim appears likely to involve indemnification.[67] This determination is a "judgment call" of the claims handler after the handler has engaged in discovery or investigated the claim.[68] The proffered evidence establishes that no genuine dispute exists as to whether the claim appeared likely to involve indemnification. Therefore, both Hargiss and LSLEP met their initial burden for their motion for summary judgment.

The burden then shifted to PESLIC to provide evidence of a genuine dispute. To defeat these motions for summary judgment, PESLIC would need to show that LeDoux's determination was unreasonable in light of the evidence before her. PESLIC has not done so. In fact, PESLIC stated that an objective reading of the Loss Runs "show[s] that the insureds believed that the *Hargiss* matter had a value of $2,500.00, $22,500.00 short of reaching the insureds' reporting threshold."[69] This statement reinforces LeDoux's determination that the claim did not appear likely to involve indemnification. Further, the Claim Diary for the Hargiss matter does not indicate Paramount received any information indicating the possibility of indemnification prior to the expiration of the extended reporting period.[70] In sum, PESLIC has not set forth any evidence suggesting indemnification appeared likely *prior* to the expiration of the extended reporting period. Accordingly, because Plaintiffs met their burden under the summary judgment standard, they are

---

[65] [Doc. No. 75-15, p. 257, PESLIC 000379; p. 485, PESLIC 000607; p. 774, PESLIC 00896; p. 1051, PESLIC 001173].
[66] [Doc. No. 72-4, p. 3].
[67] [Doc. No. 81-9, Deposition of Michael Duffy, P. 60, Lines 4-7].
[68] [Doc. No. 81-9, Deposition of Michael Duffy, P. 60, Lines 15-24].
[69] [Doc. No. 103, p. 22].
[70] [Doc. No. 102-9].

entitled to summary judgment on the issue of whether the claim appeared likely to involve indemnification.

For similar reasons, the Court finds that PESLIC's Motion must be denied. PESLIC's Motion was based entirely on its interpretation of the PESLIC Policy, and PESLIC provided no evidence establishing that the claim appeared likely to involve indemnification prior to the expiration of the extended reporting period. PESLIC did not meet its initial burden of showing the lack of a genuine dispute as to the likelihood of indemnification, so the burden never shifted to Plaintiffs.

The Court thus finds that subsection (a) applied to the Hargiss entry. To make and report a claim within the policy period, LSLEP needed to notify PESLIC "in writing" about the Hargiss claim. LSLEP provided such notice through the Loss Runs. The Loss Runs are a form of writing sent to PESLIC. The report, while lengthy, included an entry for the Hargiss claim. Because subsection (a) imposes no formalities for the notice other than that it be written, these Loss Runs constitute proper notice. LSLEP provided this notice prior to the expiration of the policy period. LSLEP thus made and reported a claim in accordance with the PESLIC Policy's notification requirements.

Because LSLEP provided notice in accordance with the PESLIC Policy, Plaintiffs are entitled to summary judgment on the issue of notice. However, the Court cannot grant the Plaintiffs' Motions in their entirety until it resolves PESLIC's remaining motions for summary judgment.

## III.      CONCLUSION

For the reasons set forth above,

**IT IS ORDERED** that the Motion on Behalf of Brian Hargiss for Summary Judgment [Doc. No. 72] and LSLEP's and Gilley's Motion for Summary Judgment [Doc. No. 81] are **GRANTED in part** and **DENIED in PART**.

To the extent that Hargiss, LSLEP, and Gilley move this Court to find that LSLEP complied with the PESLIC Policy's notification requirements, these Motions are **GRANTED**.

To the extent that Hargiss, LSLEP, and Gilley move this Court to grant judgment in their favor, these motions are **DENIED**. Before the Court can grant judgment in their favor, it must resolve the remaining pending motions for summary judgment.

To the extent that LSLEP and Gilley move this Court to declare that PESLIC's denial of coverage violated La. R.S. 22:1973 and La. R.S. 22:1892, that motion is **DENIED**.

**IT IS FURTHER ORDERED** that PESLIC's Motion for Summary Judgment on Claim Made and Reported Issue [Doc. No. 75] is **DENIED** in its entirety. The portions of PESLIC's Motion directed towards the cooperation clause and the criminal act exclusion will be addressed in PESLIC's pending motions for summary judgment on those issues.

MONROE, LOUISIANA, this 22nd day of January 2024.

Terry A. Doughty
United States District Judge

22