UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

BRIAN PATRICK HARGISS                    CASE NO.  3:22-CV-00886 LEAD

VERSUS                                   JUDGE TERRY A. DOUGHTY

PRINCETON EXCESS & SURPLUS LINES         MAG. JUDGE KAYLA D. MCCLUSKY
INSURANCE CO

MEMORANDUM RULING

        Pending before the Court is Princeton Excess and Surplus Lines Insurance Company's

("PESLIC" or "Defendant") Alternative Motion for Summary Judgment on Criminal Act

Exclusion [Doc. No. 76]. Brian Hargiss ("Hargiss") filed an Opposition to this Motion [Doc. No.

93-1], to which PESLIC filed a Reply [Doc. No. 100]. Louisiana Sheriff Law Enforcement

Program ("LSLEP") and Sheriff Gary Gilley ("Gilley") also filed an Opposition to this Motion

[Doc. No. 105] to which PESLIC filed a Reply [Doc. No. 115].

        Having considered the Motion, Oppositions, and Replies, and for the reasons set forth

below, **IT IS ORDERED, ADJUDGED,** and **DECREED** that PESLIC's Alternative Motion for

Summary Judgment on Criminal Act Exclusion [Doc. No. 76] is **GRANTED IN PART** and

**DENIED IN PART**.

I.      **FACTS AND PROCEDURAL BACKGROUND**

        This consolidated case arises from PESLIC's decision to not pay a judgment secured by

Hargiss against LSLEP, Gilley, and other deputies, all of whom were insured under a PESLIC

insurance policy.[1]

---

[1] [Doc. No. 1]; [Doc. No. 57].

a. **The *LaSalle* Litigation**

On November 26, 2017, Richland Parish Sheriff's deputies arrested Hargiss for disturbing the peace and booked him into the Richland Parish Detention Center ("RPDC").[2] At RPDC, Deputy James T. Simmons ("Simmons") struck Hargiss in the face with a closed fist.[3] This strike knocked Hargiss unconscious and broke his zygomatic arch.[4] On December 4, 2017, Simmons was arrested for battery in violation of La. R.S. 14:35 and booked into the RPDC.[5]

On November 8, 2018, Hargiss filed a complaint in the United States District Court for the Western District of Louisiana ("the *LaSalle* litigation") for damages against Gilley and other employees of the Richland Parish Sheriff's Office.[6] Hargiss alleged injuries resulting from the actions of three deputies employed by Gilley.[7] On May 15, 2018, Simmons pled guilty to the battery charge.[8] On July 18, 2019, Hargiss filed an amended complaint that expressly alleged Simmons's assault of Hargiss and named Darius Williams ("Williams"), Linder ("Linder"), Simmons, and Gilley as defendants.[9]

On October 13, 2021, the Jury rendered a verdict in favor of Hargiss.[10] On October 21, 2021, the Court entered a judgment against Gilley, Williams, Linder, and Simmons consistent with the jury's verdict.[11] The jury found for plaintiff as to both his federal claim under 42 U.S.C. § 1983 and his state law claims.[12] For his federal claims, the jury found Simmons liable for the

---

[2] [Doc. No. 76-2, ¶ 2].
[3] [Doc. No. 76-2, ¶ 4].
[4] [Doc. No. 76-2, ¶ 4].
[5] [Doc. No. 76-2, ¶ 5].
[6] [Doc. No. 76-2, ¶ 7]. Civil Action No. 3:18-cv-01466.
[7] [Doc. No. 81-1, ¶ 10, 61].
[8] [Doc. No. 76-2, ¶ 6].
[9] [Doc. No. 76-2, ¶ 8].
[10] [Civil Action No. 3:18-cv-01466, Doc. No. 191].
[11] [Civil Action No. 3:18-cv-01466, Doc. No. 201].
[12] [Civil Action No. 3:18-cv-01466, Doc. No. 201, p. 1].

use of excessive force and Linder and Williams liable for bystander liability.[13] For his state law claims, the jury found Simmons and Linder liable for the intentional tort of battery.[14] The jury found Gilley vicariously liable under Louisiana law as an employer for the actions of James Travis Simmons and Leighton Linder with respect to these state law claims."[15]

On December 9, 2021, the Court issued a Memorandum Order denying the defendants' motion for a new trial.[16] On January 11, 2022, after the Court ruled on post-trial motions and the judgment became final, LSLEP requested a payment of $421,819.96 from PESLIC, its insurance carrier.[17] Ray Bonnani ("Bonnani") denied coverage on behalf of PESLIC.[18]

### b.  The PESLIC Insurance Policy

Gilley, the Sheriff of Richland Parish, was a member of LSLEP.[19] LSLEP is a statutorily authorized interlocal risk management agency formed by member sheriffs to pool their public liability risks.[20] PESLIC issued Policy No. N1-A3-RL-00063-09 ("PESLIC Policy") to LSLEP.[21] This policy was a renewal of a prior policy between PESLIC and LSLEP, and it was effective from July 1, 2018, to July 1, 2019.[22] The PESLIC Policy identified LSLEP and "those Sheriffs in the State of Louisiana specifically scheduled in this Policy together with their successors as Sheriff" as the Named Insured.[23] Gilley is a Named Insured under the PESLIC Policy.

---

[13] [Civil Action No. 3:18-cv-01466, Doc. No. 201, p. 1].
[14] [Civil Action No. 3:18-cv-01466, Doc. No. 201, p. 1].
[15] [Civil Action No. 3:18-cv-01466, Doc. No. 201, p. 1-2].
[16] [Civil Action No. 3:18-cv-01466, Doc. No. 230].
[17] [Doc. No. 81-1, ¶ 15, 45].
[18] [Doc. No. 81-1, ¶ 7].
[19] [Doc. No. 81-1, ¶ 3, 12].
[20] [Doc. No. 81-1, ¶ 2].
[21] [Doc. No. 76-2, ¶ 1].
[22] [Doc. No. 76-2, ¶ 1].
[23] [Doc. No. 76-2, ¶ 1].

The PESLIC Policy contained a Retained Limit of $100,000.00 for each occurrence or wrongful act.[24] The PESLIC Policy provided General Liability Coverage, Wrongful Act Liability Coverage, and Law Enforcement Activities Coverage so long as all conditions for coverage were satisfied.[25] The PESLIC Policy was active from July 1, 2018, to July 1, 2019, with an extended reporting period of sixty days or until August 30, 2019.[26]

### c.   Administration of the Hargiss Claim

The PESLIC Policy identified Mount Claims Services, LLC, d/b/a Paramount Claims Service ("Paramount") as the claims administrator for LSLEP.[27] Tracy LeDoux ("LeDoux"), an employee at Paramount, acted as the claims manager handling the Hargiss claim on behalf of LSLEP.[28] Munich Re is the claims administrator for PESLIC.[29] Michael Duffy ("Duffy") and Bonnani worked as claims specialists on the Hargiss claim.[30]

In December 2018, after Hargiss filed suit, Gilley informed Paramount that Hargiss had asserted a claim against him in the *LaSalle* litigation ("the Hargiss claim").[31] On January 11, 2022, LSLEP requested a payment of $421,819.96 from PESLIC.[32] After receiving LSLEP's request for payment, Bonnani communicated with Paramount confirming a denial of coverage.[33]

### d.   The Pending Litigation

On February 25, 2022, Hargiss filed suit against PESLIC in state court to recover the final judgment ordered in the *LaSalle* litigation.[34] On April 4, 2022, PESLIC removed Hargiss's

---

[24] [Doc. No. 81-1, ¶ 12].
[25] [Doc. No. 81-1, ¶ 21-22].
[26] [Doc. No. 81-1, ¶ 20].
[27] [Doc. No. 81-1, ¶ 5].
[28] [Doc. No. 81-1, ¶ 5].
[29] [Doc. No. 81-1, ¶ 8, 30].
[30] [Doc. No. 81-1, ¶ 6, 7, 30].
[31] [Doc. No. 81-1, ¶ 27].
[32] [Doc. No. 81-1, ¶ 15, 45].
[33] [Doc. No. 81-1, ¶ 7].
[34] [Doc. No. 2].

pending case to this Court.[35] On April 8, 2022, LSLEP and Gilley filed suit against PESLIC seeking damages and declaratory relief.[36] On May 15, 2023, the Court consolidated these two actions.[37]

PESLIC has filed an Alternative Motion for Summary Judgment on Criminal Act Exclusion [Doc. No. 76] in which it argues that Simmons's commission of a criminal act precludes indemnification of the Hargiss claim because of the criminal act exclusion in the PESLIC Policy. Hargiss argues the criminal act exclusion does not apply to the Hargiss claim. LSLEP asserts that Gilley's vicarious liability is covered under the PESLIC Policy's Law Enforcement Endorsement and, at the very least, the criminal act exclusion is ambiguous and should be interpreted in favor of coverage.

The issues have been briefed, and the Court is prepared to rule.

## II.    LAW AND ANALYSIS

### a.  Summary Judgment Standard

Under FED. R. CIV. P. 56(a), "[a] party may move for summary judgment, [and] [t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "If the moving party meets the initial burden of showing there is no genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc*., 738 F.3d 703, 706 (5th Cir. 2013) (internal quotation marks and citation omitted); *see also* Fed. R. Civ. P. 56(c)(1). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242,

---

[35] [Doc. No. 1].
[36] [3:22-cv-00952, Doc. No. 1].
[37] [Doc. No. 60].

248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

"[A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (*citing Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. "A non-conclusory affidavit can create genuine issues of material fact that preclude summary judgment, even if the affidavit is self-serving and uncorroborated." *Lester v. Wells Fargo Bank, N.A.*, 805 F. App'x 288, 291 (5th Cir.  2020) (citations omitted). Additionally, "a district court has somewhat greater discretion to consider what weight it will accord the evidence in a bench trial than in a jury trial." *Matter of Placid Oil Co.*, 932 F.2d 394, 397 (5th Cir. 1991).

Summary judgment is appropriate when the evidence before a court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  No genuine dispute as to a material fact exists when a party fails "to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323. Further, "[s]ummary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts …, under which coverage could be afforded." *Reynolds v. Select Properties, Ltd.*, 634 So. 2d 1180, 1183 (La. 1994).

### b. Interpretation of Insurance Policies

In an action that requires "the interpretation of insurance policies issued in Louisiana, Louisiana substantive law governs our decisions." *Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co*., 352 F.3d 254, 260 (5th Cir. 2003). Under Louisiana law, "[a]n insurance policy is an aleatory contract subject to the same basic interpretive rules as any other contract." *Doerr v. Mobil Oil Corp*., 774 So. 2d 119, 123 (La. 12/19/00), *opinion corrected on reh'g*, 782 So. 2d 573 (La. 3/16/01). "[A]n insurance contract must be interpreted as a whole." *F.D.I.C. v. Booth*, 82 F.3d 670, 674 (5th Cir. 1996). When interpreting insurance contracts, the Court's function is to determine the parties' common intent. La. Civ. Code Ann. art. 2045. *See also Doerr*, 774 So. 2d at 124.

The Court will examine the insurance policy itself to find the parties' intent. *Id*. "The words of a contract must be given their generally prevailing meaning." La. Civ. Code Ann. art. 2047. Additionally, "[w]ords susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract." La. Civ. Code Ann. art. 2048. Similarly, "[a] provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective." La. Civ. Code Ann. art. 2049.

"When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code Ann. art. 2046. A contract is ambiguous "on the issue of intent when either it lacks a provision bearing on that issue, the terms of a written contract are susceptible to more than one interpretation, there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed." *Campbell v. Melton*, 817 So. 2d 69, 75 (La. 5/14/02). Whether

provisions are ambiguous is a question of law. *CLK Company, LLC v. CXY Energy, Inc.*, 972 So. 2d 1280, 1286 (La. App. 3d Cir. 2007). Further, "[a]n insurance contract … should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or to restrict its provisions beyond what is reasonably contemplated by unambiguous terms or achieve an absurd conclusion." *Cadwallader v. Allstate Ins. Co.*, 848 So. 2d 577, 580 (La. 6/27/03). In other words, the court is not authorized to "exercise … inventive powers to create an ambiguity where none exists or [to make] a new contract when the terms express with sufficient clearness the parties' intent." *Id.*

"A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties." La. Civ. Code Ann. art. 2053. Put differently, the Court may only look to extrinsic evidence when the policy's language is ambiguous or absurd. *Doerr*, 774 So. 2d at 124. Further, the general rule is that "any ambiguities within the policy must be construed in favor of the insured to effect, not deny, coverage." *Id.* "[E]quivocal provisions seeking to narrow an insurer's obligation are strictly construed against the insurer." *Cadwallader*, 848 So. 2d at 580. However, this "strict construction principle applies only if the ambiguous policy provision is susceptible to two or more *reasonable* interpretations." *Id.* (emphasis original). As for the policy itself, "[w]hen determining whether or not a policy affords coverage for an incident, it is the burden of the insured to prove the incident falls within the policy's terms." *Doerr*, 774 So. 2d at 124. However, "the insurer bears the burden of proving the applicability of an exclusionary clause within a policy." *Id.*

The Court shall now apply these principles to the PESLIC Policy to determine whether the criminal exclusion clause excludes coverage in this matter.

### c.   Interpretation and Application of the Criminal Act Exclusion

The "Liability Conditions, Definitions, and Exclusions" section of the PESLIC Policy provides that the policy does not apply to "[a]ny liability arising out of any criminal, fraudulent, dishonest act, or bad faith of an Insured or arising from the deliberate violation of any federal, state, or local statute, ordinance, rule or regulation committed by or with the knowledge of an Insured."[38] The Court must determine whether this phrase unambiguously excludes liability of those who did not commit a criminal act but whose liability stems, at least in part, from a criminal act.

PESLIC argues that this provision excludes coverage for the Hargiss claim. PESLIC reads the phrase "arising out of" to unambiguously preclude coverage of insureds who did not personally commit the criminal act but who were, nevertheless, partially liable because of the original criminal act. Based on this interpretation, PESLIC urges that its Motion should be granted. More specifically, PESLIC asserts that the exclusion bars coverage here because (1) Simmons committed a criminal act, (2) Simmons's liability to Hargiss arose from that criminal act, and (3) Gilley's and the other deputies' liability partially arose from Simmons's criminal act. Further, to the extent Gilley and the other deputies were not liable for Simmons's criminal act, the measure of this liability is less than $100,000. Therefore, PESLIC's indemnification obligations were not triggered because these claims do not enter the PESLIC layer.

Plaintiffs disagree. Hargiss first asserts that the "arising out of" language does not extend to claims that only indirectly derive from the criminal act of a separate insured. Hargiss further argues that the liability of Williams and Linder does not arise from a criminal act. Rather, their liability derived from their failure to prevent a violation of Hargiss's constitutional rights. LSLEP similarly asserts that Gilley did not engage in a criminal act and that his vicarious

---

[38] [Doc. No. 76-4, p. 24].

liability is covered under the PESLIC Policy's Law Enforcement Endorsement. LSLEP additionally argues the provision is ambiguous and should thus be construed in favor of coverage.

In this case, Simmons was convicted of battery because he struck Hargiss. The parties do not dispute that the actions of Simmons are not covered by the PESLIC Policy. Rather, the parties dispute whether the criminal act exclusion bars indemnification for the remaining insureds in this matter, namely Sheriff Gilley and the other deputies present at the time of the battery. Whether coverage is required ultimately depends on an analysis of several sub-issues. Specifically, the Court must determine (1) to what events the criminal act exclusion applies and the breadth of the criminal act exclusion, and (2) whether this clause excludes coverage of the Hargiss claim.

### i. *Interpretation of the Criminal Act Exclusion*

Once again, the PESLIC Policy does not apply to "[a]ny liability arising out of any criminal, fraudulent, dishonest act, or bad faith of an Insured."[39] The parties primarily focus on the "arising out of" language. These arguments presuppose that the exclusion can apply to conduct that is only a criminal act. However, a plain reading of the phrase in its entirety suggests that the exclusion applies only to criminal, fraudulent, *and* dishonest acts.

LSLEP addressed the phrase "criminal, fraudulent, dishonest act" in its Opposition. LSLEP noted that "act" only follows the phrase "dishonest" and that "no conjunction, such as "and" or "or" … would allow the word "act" to modify the terms "criminal" and "fraudulent."[40] Based on this construction, LSLEP made two arguments: (1) that the provision is incomprehensible (2) or that the conjunction "and" should be added, in which case coverage

---

[39] [Doc. No. 76-4, p. 24].
[40] [Doc. No. 105, p. 12].

would not be excluded. In response, PESLIC asserts that "criminal", "fraudulent", and "dishonest" are cumulative adjectives modifying "act", and, consequently, "the sentence is grammatically correct and is subject to only one reasonable construction—that is, 'criminal' modifies 'act.'"[41]

PESLIC is incorrect. PESLIC cited an online article[42] to support its assertion, yet this article undercuts PESLIC's argument. A cumulative adjective is a set of adjectives that modify a noun *together*. The individual adjectives do not independently describe the noun. Take, for instance, the phrase "bright green spider."[43] In this example, "[t]he spider is not only green but bright green. The color adjective is made more precise by the addition of another descriptor to it."[44] Cumulative adjectives cannot be rearranged because the writer must present them in a certain order. Cumulative adjectives also cannot be separated by "and." Applying these principles here makes it apparent that "criminal", "fraudulent", and "dishonest" are not cumulative adjectives. "Criminal" does not modify both the other adjectives and the noun, and the order of the words can be rearranged and "and" added to the sentence without the sentence becoming confusing or ungrammatical.

Instead, the only grammatical conclusion is that "criminal", "fraudulent", and "dishonest" are coordinate adjectives. Coordinate adjectives are two or more adjectives used to describe the same noun. An example from the Fifth Circuit Court of Appeals is illustrative. In *Lightfoot v. Gilley*, No. 22-30374, 2023 WL 2586313, *2 (5th Cir. Mar. 21, 2023), the Fifth Circuit interpreted the phrase "pro se, in forma pauperis, civil pleading." The Fifth Circuit noted that "the absence of the word 'or' indicates that the adjectives … are all coordinate adjectives that

---

[41] [Doc. No. 115, p. 8].

[42]   [Richard Nordquist, *Cumulative Adjectives: Definition and Examples*, THOUGHTCO, Nov. 5, 2019, https://www.thoughtco.com/what-is-cumulative-adjectives-1689815 (last accessed Feb. 6, 2024).]

[43] [*Id.*]

[44] [*Id.*]

modify the same noun, 'pleading.'" *Id*. Accordingly, the only pleadings that qualified under that standard were those that met all the required conditions: pro se, *in forma pauperis*, and civil. *Id*. A pleading would not be covered if, for example, it were only pro se but not civil or filed *in forma pauperis*. The structure of the sentence in *Lightfoot* is virtually identical to the phrase at issue here. The lack of "or" between the adjectives and "act" indicates that "criminal", "fraudulent", and "dishonest" are coordinate adjectives that must be read together. As such, under a plain reading of the exclusion, an act would only be covered where it is criminal, fraudulent, and dishonest.

Yet that is not how the parties have interpreted this phrase in the past. In fact, no party here argues that Simmons, who committed an act that was only criminal, is covered by the PESLIC Policy. A plain reading of the phrase seemingly creates an absurd result. PESLIC likely would not intend to write an exclusion that only applies to acts that are fraudulent, criminal, and dishonest because such an exclusion would apply only to the narrowest of conduct. The only interpretation of this policy that does not create an absurd result is adding "or" between the adjectives and "act." This reading ensures the exclusion is not rendered so narrow as to become absurd and nearly meaningless.

The Court now turns to the phrase "arising out of." PESLIC reads this phrase to unambiguously preclude coverage of insureds who did not commit the act but whose liability partially derived from a criminal act committed by another insured. PESLIC chiefly relies on *Bonin v. Westport Ins. Corp*., 930 So. 2d 906 (La. 5/17/06). In *Bonin*, an insured attorney negotiated a settlement on the plaintiffs' behalf without their knowledge or consent, and his employee signed the settlement agreement and acknowledgement as a witness. *Id*. at 909. The employee did not know that the attorney forged the plaintiffs' signatures. *Id*. The insurance

policy excluded coverage for claims "based upon, arising out of, attributable to, or directly or indirectly resulting from … any criminal, dishonest, malicious, or fraudulent act … committed by an insured." *Id*. at 911 (emphasis removed). The attorney's acts clearly fell under this exclusion, but the court had to determine whether the employee's acts were excluded as well. *Id*. at 911-12.

The court ultimately found that the insurance policy excluded coverage of the employee's act. *Id*. at 908. It noted that, in the absence of a dishonest or fraudulent act of the attorney, the employee would not have had to sign as a witness. *Id*. at 914. Therefore, "the claim against [the employee] is based upon, arising out of, or at a minimum the indirect result of, [the attorney's] dishonest and fraudulent conversion because without his fraud, there would be no damage." *Id*. In so holding, the court noted that applying the policy only against individuals who were adjudged of such acts would render meaningless the phrase "based upon, arising out of, attributable to, or directly or indirectly resulting from." *Id*. at 915.

Similarly, the Louisiana Supreme Court has previously held, in relation to a contractual indemnification provision, that the phrase "arising out of" requires a "connexity similar to that required for determining cause-in-fact." *Perkins v. Rubicon, Inc*., 563 So. 2d 258, 259 (La. 1990). In *Perkins*, the parties entered into a contract for maintenance services in which one party agreed to "indemnify and hold [Rubicon] harmless from all claims, suits, actions, losses and damages for personal injury … arising out of [B&B's] performance of the work contemplated by this agreement." *Id*. at 258 (changes original). In determining the scope of the "arising out of" language, the court rejected the argument that it required the fault of the contractor. *Id*. at 259. Instead, the court inquired into whether "the particular injury [would] have occurred but for the performance of work under the contract." *Id*. This causation was "established by showing that

the injured employee was engaged in work under the contract at the time of his injury [because] Perkins would not have been present at the site to be injured but for B & B's performance of the work under the contract." *Id*.

These cases indicate that phrase "arising out of" has been interpreted to require something akin to "but-for" causation. In *Bonin*, the employee would not have "witnessed" a fraudulent document if the attorney had not created it. [45] *Bonin*, 930 So. 2d at 914. Likewise, the injury in *Perkins* would not have occurred if the plaintiff were not performing work under the contract. *Perkins*, 563 So. 2d at 259. Each of these cases required a tight causal nexus between the excluded act and the act at issue. This nexus can encompass more acts than the exact act adjudged to be criminal, dishonest, or fraudulent.

Such an interpretation is supported by the fact that this exclusion applies to "an insured." When compared to "the insured", the use of "an" is less specific, suggesting that the exclusion goes beyond just "the insured" who committed the act. *See Bonin*, 930 So. 2d at 913 (finding that the phrase "an insured" implied that "the insured against whom the claim is brought need not be the same insured who committed the dishonest and fraudulent act"). Therefore, the exclusion could not be reasonably limited to the specific act committed by an insured.

The exact bounds of what is covered by this phrase is not as easily determinable. Ultimately, "arising out of" implies that it covers more than those acts that are directly related to a criminal, fraudulent, or dishonest act. In other words, the act need not be independently considered criminal, fraudulent, or dishonest. It must instead be sufficiently connected to the original excluded act such that it can be fairly said that the act at issue would not have happened

---

[45] As discussed more in-depth below, *Bonin* is not entirely analogous due to the broader language of the insurance policy in that case.

in the absence of the excluded act. The Court shall now apply this interpretation to the acts at issue in this case.

### ii.    Application of the Criminal Act Exclusion

Gilley, Simmons, Williams, and Linder, the defendants in the original action, were insured under the PESLIC Policy. Gilley is classified as a Named Insured. Simmons, Linder, and Williams are insureds because they were acting within the scope of their duties for Gilley, a Named Insured.

Simmons pled guilty to simple battery after punching Hargiss, and simple battery is a criminal offense. The jury found Simmons civilly liable for excessive force under 42 U.S.C. § 1983 and the intentional tort of battery for that same punch. Because the civil liability and guilty plea arose from the same act, Simmons' liability clearly arose from an adjudicated criminal act and is excluded. What is less clear is whether the liability of Linder, Williams, and Gilley arose from a criminal act.

### i.    Deputies Williams and Linder

The jury found Linder liable for the intentional tort of battery. The jury further found Linder and Williams liable for bystander liability under 42 U.S.C. § 1983. Linder and Williams were "bystanders" because they watched Simmons use excessive force against Hargiss and failed to stop him. The Court shall address each in turn.

First, Linder's actions for the state law claim arose exclusively from his own actions. These actions have not been adjudged to a criminal act and have no connection to Simmons's criminal charge. Accordingly, the criminal act exclusion does not apply to these claims. PESLIC concedes it would feasibly be liable for this intentional tort. Whether this act triggers PESLIC's indemnification obligations likely depends on the resolution of the other claims in this matter. At

this juncture, this Court will not determine whether the remaining claims trigger PESLIC's indemnification obligations. If necessary, the Court will order further briefing as to this issue following the resolution of the remaining motion for summary judgment. As such, to the extent PESLIC moves this Court to exclude coverage of Linder's intentional tort claim, PESLIC's Motion is **DENIED**.

Second, both Linder and Williams were liable under 42 U.S.C. § 1983 for bystander liability. PESLIC argues that this bystander liability arose from a criminal act because the punch they observed was adjudicated to be a criminal act. The Court agrees. When Simmons punched Hargiss, Simmons committed a criminal act. This criminal act also violated Hargiss's constitutional rights. Linder and Williams violated Hargiss's constitutional rights when they observed Simmons punch Hargiss. Necessarily, then, their liability arose from a criminal act. Linder and Williams would not have been civilly liable under 42 U.S.C. § 1983 if Simmons had not punched Hargiss. This punch was a criminal act. Therefore, Linder and Williams would not be liable in the absence of a criminal act. Their liability thus arose from Simmons's criminal act and is excluded under the PESLIC Policy. As such, to the extent PESLIC moves this Court to exclude coverage of Linder's and William's bystander liability claims, PESLIC's Motion is **GRANTED**.

In sum, to the extent PESLIC moves for summary judgment to exclude coverage of Linder's intentional tort claim, PESLIC's Motion is **DENIED.**  To the extent that PESLIC moves for summary judgment to exclude coverage of the bystander liability claims against Linder and Williams, PESLIC's Motion is **GRANTED**.

ii.    *Sheriff Gilley*

The jury found Gilley vicariously liable under Louisiana law for the intentional torts of Simmons and Linder. As stated above, Simmons committed the intentional tort of battery when he struck Hargiss, and this same punch was adjudicated to be a criminal act. The Court must determine to what extent, if any, Gilley's vicarious liability arose out of Simmons's criminal act.

LSLEP argues that the Law Enforcement Endorsement ("Endorsement") requires PESLIC to indemnify Gilley. The criminal act exclusion is set forth in the "Liability Conditions, Definitions, and Exclusions" section of the PESLIC Policy. These exclusions apply to the entirety of the PESLIC Policy. The General Liability Coverage Part is a subset of the PESLIC Policy that covers bodily injury, personal injury, advertising injury, and property damage. This coverage part applies to Hargiss's claim because he suffered a bodily injury, i.e., "[i]njury to the body, sickness or disease."[46] This coverage part includes its own exclusions that are in addition to those set forth in the "Liability Conditions, Definitions, and Exclusions" section. Specifically, this coverage part excludes coverage for "Bodily Injury … either expected or intended from the standpoint of an Insured."[47] This exclusion is modified by the Endorsement. While expected or intentional bodily injury is generally not covered, the exclusion does not apply "[w]ith respect to your Law Enforcement Activities, including Bodily Injury … in connection with … the arrest or incarceration of persons (unless adjudicated to be a criminal act)."[48] "Your" refers to a "Named Insured", meaning this provision would only apply to Gilley.[49] Law enforcement activities are defined as "[a]ctions taken in the performance by an Insured of duties which are within the

---

[46] [Doc. No. 76-4, p. 11].
[47] [Doc. No. 76-4, p. 32].
[48] [Doc. No. 76-4, p. 44].
[49] [Doc. No. 76-4, p. 5].

course and scope of the Insured's employment as a law enforcement officer … and which are intended and designed to accomplish such duties."[50]

In sum, the criminal act exclusion excludes coverage for liability arising out of a criminal act. The General Liability Coverage Part further excludes coverage for bodily injury that an insured either expects or intends. The Endorsement then modifies the intentional injury exclusion. This modification covers Named Insureds, like Gilley, for law enforcement activities in connection with an arrest or incarceration where such activities cause intentional or expected bodily injury and are not adjudicated to be a criminal act on the part of the Named Insured.

PESLIC correctly asserts that the Endorsement does not expressly modify the criminal act exclusion. However, each provision set forth in a contract must be interpreted in light of the other contract provisions and the contract as a whole. In other words, the Court cannot simply ignore the Endorsement. The jury found Simmons and Linder liable for intentional torts, meaning that any bodily injury they caused was intentional. Gilley was found vicariously liable for these intentional acts. The Court must now determine whether, under these facts, the Endorsement would apply to Gilley and whether this Endorsement modifies how the criminal act exclusion applies to Gilley.

PESLIC argues that the Endorsement is irrelevant because Gilley did not commit an intentional act. Certainly, the intentional injury exclusion could reasonably be read as only applying to intentional acts committed by a specific insured. The exclusion specifically analyzes whether an act was intentional from the standpoint of an insured. Unlike the criminal act exclusion, neither the general liability exclusion nor the endorsement provides that the provisions apply to acts "arising out of" an intentional act. These provisions are thus seemingly limited to the act of a specific Named Insured. Gilley did not commit an intentional act that injured

---

[50] [Doc. No. 76-4, p. 46].

Hargiss. Therefore, under PESLIC's interpretation, this provision would not apply, and the modification would appear irrelevant to the facts at issue.

However, the Endorsement could also be reasonably read to provide coverage to Gilley. When the Endorsement modification and General Liability Coverage Part exclusion are read together, the exclusion refers to the standpoint of "an Insured" whereas the modification applies specifically to a Named Insured's Law Enforcement Activities. As discussed above, "an insured" goes beyond just those individuals who committed the act at issue. Therefore, the endorsement could reasonably include intentional bodily injury caused by any insured, not just a Named Insured. The "limitation" imposed by this expansive language is that the endorsement applies only to the law enforcement activities of the Named Insured. The modification further asserts it does not apply with respect to a Named Insured's law enforcement activities that are adjudicated to be a criminal act. Unlike the criminal act exclusion, however, this exclusion does not contain the phrase "arising out of." Accordingly, a reasonable interpretation of this provision is that the specific law enforcement activities of the Named Insured must be criminal to be excluded. In other words, the Endorsement could reasonably be read as allowing a Named Insured to receive coverage for the intentional and criminal acts of another insured so long as the Named Insured did not commit a criminal act.

PESLIC asserts that this Endorsement does not affect the criminal act exclusion because it amends a different exclusion. Certainly, this interpretation of the PESLIC Policy could be reasonable. However, another reasonable interpretation is that the phrase "arise out of" in the criminal act exclusion does not extend to vicarious liability for the intentional criminal acts committed by another insured. This interpretation considers the exclusions set forth in the PESLIC Policy together. If the criminal act exclusion is allowed to exclude vicarious liability for

intentional criminal acts, the modification in the Law Enforcement Endorsement would be rendered superfluous. A reasonable interpretation is that the criminal act exclusion does not cover the vicarious liability of a Named Insured for intentional criminal acts committed by another insured.

When a provision is ambiguous, as is the case here, the provision should be read to provide coverage. Further, "[s]ummary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts …, under which coverage could be afforded." *Reynolds*, 634 So. 2d at 1183. A reasonable interpretation provides coverage here. Namely, the PESLIC Policy's Law Enforcement Endorsement could be read as allowing a Named Insured, like Gilley, to be covered for vicarious liability even where that vicarious liability derives from an intentional criminal act. Because Gilley's vicarious liability would be covered, the criminal act exclusion would not apply under this interpretation.

Alternatively, the Court notes that, even if the Endorsement does not apply, the causal nexus between Gilley's vicarious liability and Simmons's criminal act is weaker than the nexus between Simmons' criminal act and the deputies' actions. The deputies actively observed this criminal act. Conversely, Gilley was found liable simply because he employed the deputies. Even though Simmons committed a criminal act and Gilley was found vicariously liable for Simmons's action, the Court finds that the but-for causation is more attenuated here. Specifically, Gilley was found vicariously liable because Simmons was his employee and committed this action in the course and scope of his employment. If Simmons had not been an employee, Gilley would not be vicariously liable. The criminal act of Simmons was merely one component of Gilley's liability, so Gilley's liability did not necessarily arise out of Simmons'

criminal act. Further, while the Court does not give great weight to the evidence of the prior dealings of the parties set forth by LSLEP,[51] these prior dealings likewise suggest that this interpretation is reasonable. PESLIC has previously provided coverage for member sheriffs, like Gilley, who were found vicariously liable for the criminal acts of their deputies. At the very least, this interpretation of the applicability of the criminal act exclusion is one reasonable interpretation of the policy. As was explained above, the PESLIC Policy should be interpreted to provide coverage where ambiguity exists.

As stated in regard to Linder's intentional tort claim, at this juncture, this Court will not determine whether the remaining claims trigger PESLIC's indemnification obligations. If necessary, the Court will order further briefing as to this issue following the resolution of the remaining motion for summary judgment.

Accordingly, to the extent PESLIC moves this Court to exclude coverage for Gilley's claims, PESLIC's Motion is **DENIED**.

## III.    CONCLUSION

For the reasons set forth above,

**IT IS ORDERED, ADJUDGED,** and **DECREED** that PESLIC's Alternative Motion for Summary Judgment on Criminal Act Exclusion [Doc. No. 76] is **GRANTED in part** and **DENIED in part.**

To the extent that PESLIC moves for summary judgment to exclude coverage of Linder's intentional tort claim, PESLIC's Motion is **DENIED**.

To the extent that PESLIC moves for summary judgment to exclude coverage of the bystander liability claims against Linder and Williams, PESLIC's Motion is **GRANTED**.

---

[51] [Doc. No. 105, p. 4-5, p. 9-11].

To the extent that PESLIC moves this Court to exclude coverage for Gilley's claims, PESLIC's Motion is **DENIED**.

MONROE, LOUISIANA, this 6th day of February 2024.

_____
TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE