UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

BRIAN PATRICK HARGISS                    CASE NO.  3:22-CV-00886 LEAD

VERSUS                                   JUDGE TERRY A. DOUGHTY

PRINCETON EXCESS & SURPLUS LINES         MAG. JUDGE KAYLA D. MCCLUSKY
INSURANCE CO

<u>MEMORANDUM RULING</u>

Pending before the Court is a Motion for Summary Judgment [Doc. No. 153] filed by

Plaintiff, Brian Hargiss ("Plaintiff" or "Hargiss"). Princeton Excess and Surplus Lines Insurance

Company ("PESLIC" or "Defendant") filed an Opposition [Doc. No 160], to which Plaintiff

filed a Reply [Doc. No. 161].

Having considered the Motion, Opposition, and Reply, and for the reasons set forth

below, **IT IS ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Motion is

**GRANTED IN PART** and **DENIED IN PART**.

I.      **FACTS AND PROCEDURAL BACKGROUND**

This consolidated case arises from PESLIC's decision to not pay a judgment secured by

Hargiss against LSLEP, Gilley, and other deputies, all of whom were insured under a PESLIC

insurance policy.[1]

PESLIC issued Policy No. N1-A3-RL-00063-09 ("Policy") to the Louisiana Sheriffs'

Law Enforcement Program ("LSLEP").[2] Richland Parish Sheriff Gary Gilley ("Gilley") was a

member of LSLEP.[3] The Policy listed LSLEP and specifically identified Sheriffs, such as the

---

[1] [Doc. No. 1]; [Doc. No. 57].
[2] [Doc. No. 78-2, ¶ 1].
[3] [Doc. No. 153-1, ¶ 2].

Richland Parish Sheriff, as the Named Insureds, and it insured these named individuals against liability in excess of $100,000.00.[4]

On October 21, 2021, this Court entered a judgment in favor of Hargiss and against Gilley and Deputies Darius Williams ("Williams"), Leighton Linder ("Linder"), and James Simmons.[5] This judgment was in excess of $100,000.00.[6] It is undisputed that Hargiss is a third party.[7]

On February 25, 2022, Hargiss filed suit against PESLIC in state court to recover the final judgment.[8] On April 4, 2022, PESLIC removed Hargiss's case to this Court.[9] On April 8, 2022, LSLEP and Gilley filed suit against PESLIC seeking damages and declaratory relief.[10] On May 15, 2023, the Court consolidated these two actions.[11]

This Court has issued several rulings interpreting this Policy.[12] Relevant here, this Court has ruled that (1) LSLEP made and reported a claim in accordance with the Policy's notification requirements,[13] (2) the criminal act exclusion bars the bystander liability claims against Linder and Williams but does not bar the intentional tort claim against Linder and the vicarious liability claims against Gilley,[14] and (3) a genuine dispute of material fact exists as to whether LSLEP complied with the Policy's cooperation clause and whether PESLIC was prejudiced by any alleged breach.[15]

---

[4] [Doc. No. 78-2, ¶ 1]; [Doc. No. 153-1, ¶ 3].
[5] [Civil Action No. 3:18-cv-01466, Doc. No. 201]; [Doc. No. 153-1, ¶ 1].
[6] [Doc. No. 153-1, ¶ 8].
[7] [Doc. No. 153-1, ¶ 6].
[8] [Doc. No. 2].
[9] [Doc. No. 1].
[10] [Civil Action No. 3:22-cv-00952, Doc. No. 1].
[11] [Doc. No. 60].
[12] [Doc. Nos. 134, 135, and 143].
[13] [Doc. No. 134, p. 18-22].
[14] [Doc. No. 135, p. 21-22].
[15] [Doc. No. 143, p. 29-32].

Hargiss now moves for summary judgment granting his claims for damages against PESLIC. Hargiss asserts that, as a third party, he is entitled to pursue a direct action against PESLIC pursuant to La. R.S. § 22:1269, more commonly referred to as the "Direct Action Statute." He further claims that any breach of the cooperation clause on the part of LSLEP and Gilley does not preclude him from suing PESLIC directly. Therefore, he asserts that no genuine dispute exists as to the viability of his claim against PESLIC. In response, PESLIC asserts that the Direct Action Statute does not provide Hargiss with greater rights than the insured, meaning that any breach on the part of the insured would preclude Hargiss's own recovery against PESLIC.

The issues have been briefed, and the Court is prepared to rule.

## II.    LAW AND ANALYSIS

### a.  Summary Judgment Standard

Under FED. R. CIV. P. 56(a), "[a] party may move for summary judgment, [and] [t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "If the moving party meets the initial burden of showing there is no genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, 738 F.3d 703, 706 (5th Cir. 2013) (internal quotation marks and citation omitted); *see also* Fed. R. Civ. P. 56(c)(1). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party.  *Id.*

3

"[A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (*citing Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. "A non-conclusory affidavit can create genuine issues of material fact that preclude summary judgment, even if the affidavit is self-serving and uncorroborated." *Lester v. Wells Fargo Bank, N.A.*, 805 F. App'x 288, 291 (5th Cir. 2020) (citations omitted). Additionally, "a district court has somewhat greater discretion to consider what weight it will accord the evidence in a bench trial than in a jury trial." *Matter of Placid Oil Co.*, 932 F.2d 394, 397 (5th Cir. 1991).

Summary judgment is appropriate when the evidence before a court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  No genuine dispute as to a material fact exists when a party fails "to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323. Further, "[s]ummary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts …, under which coverage could be afforded." *Reynolds v. Select Properties, Ltd*., 634 So. 2d 1180, 1183 (La. 1994).

### b. Direct Action Statute

Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity jurisdiction applies the substantive law of the forum state. The Direct Action Statute provides that an "injured person … shall have a right of direct action against the insurer within the terms and limits of the policy" so long as certain requirements are met. La. R.S. § 22:1269(B)(1). The statute further provides that "any action brought under the provisions of this Section shall be subject to all of the lawful conditions of the policy or contract and the defenses which could be urged by the insurer to a direct action brought by the insured." La. R.S. § 22:1269(C). This statute "does not create an independent cause of action against the insurer." *Seibel v. Holmes*, 371 So. 3d 1082, 1087 (La. App. 1 Cir. 8/16/23). Instead, the statute "grants a procedural right of action against an insurer where the plaintiff has a substantive cause of action against the insured." *Id*.

At issue in this Motion is whether the Direct Action Statute allows an injured third party to sue an insurer where the insured breached a cooperation clause. This ruling shall focus on that issue alone, and any holdings made herein do not affect the Court's prior findings unless expressly indicated.[16]

Hargiss asserts that the Direct Action Statute provides a right of action against the insurer even where the insured violated the cooperation clause. He chiefly relies on *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Cagle*, 68 F.3d 905, 912 (5th Cir. 1995) (holding that a breach of the cooperation clause "would not affect the [plaintiff's] rights, as a third-party claimant, to the

---

[16] The Court notes that it stated "neither LSLEP, Gilley, nor Hargiss can sue PESLIC for indemnification under this policy unless the insured complied with the policy terms" in the prior ruling [Doc. No. 143, p. 12]. PESLIC interpreted this statement to mean that this Court already determined Hargiss could not sue under the Direct Action Statute if LSLEP breached the cooperation clause. Such effect was unintentional. In fact, this Court expressly declined to rule on that issue. To the extent that general statement can be read as a holding regarding the applicability of the Direct Action Statute, such statement is overruled here.

proceeds of [the insurer's] policy, absent fraud or collusion"). However, PESLIC maintains that courts have since found that "the third party's rights are no greater than the insured's." *United Home Care, Inc. v. Simpson*, 351 So. 3d 904, 911 (La. App. 2 Cir. 11/16/22), *writ denied*, 358 So. 3d 518 (La. 3/28/23). Therefore, PESLIC asserts that the holding in *Nat'l Union Fire Ins. Co.* does not apply, and this Court should instead be guided by cases like *United Home Care, Inc*.

The issue is not as simple as either party believes. As discussed below, neither case is fully instructive on the issue before the Court. Therefore, the Court shall begin with a discussion of cases interpreting this statute.

In 1950, the Louisiana Supreme Court held that the phrase "within the terms and limits of the policy" did not apply to coverage conditions; thus, "where the third person is not at fault … he cannot be made liable for the breaching of an agreement by the insured with his insurer." *West v. Monroe Bakery*, 217 La. 189, 211 (1950). The court further found that the statute conferred "substantive rights on third parties … which become vested at the moment of the accident in which they are injured." *Id*. at 191 (emphasis removed). Such a finding comported with the fact that Louisiana courts consistently upheld "the statutorily granted right against the insurer … regardless of dilatory conduct on the insured's part in giving notice." *Id*. at 192. *See also Futch v. Fid. & Cas. Co. of New York*, 246 La. 688, 700 (1964) (holding that "the insurer's obligation to the injured person under the direct action statute … becomes fixed as of the occasion of the accident and cannot be prejudiced by the action of the insured in the absence of evidence of fraud or conspiracy"); *King v. King*, 253 La. 270, 284 (1968). *Nat'l Union Fire Ins. Co.* relied on this line of cases when it held that that a breach of the cooperation clause "would not affect the [plaintiff's] rights, as a third-party claimant, to the proceeds of [the insurer's] policy, absent fraud or collusion." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 68 F.3d at 912.

*West* and its progeny acknowledge that the insured, and not the third party, contracts to give notice. *Auster Oil & Gas, Inc. v. Stream*, 891 F.2d 570, 578 (5th Cir. 1990). Because the third party's rights derive from the statute and not the policy, "[t]he third party's rights under the statute vest at the time of injury, whereas the rights of the insured remain subject to conditions in the policy that arise subsequent to the injury, such as the requirement of notice." *Id*. This holding further "comports with the basic legislative purpose" of the statute. *Id*. Specifically, "[t]he statute expresses the public policy of this State that an insurance policy against liability is not issued primarily for the protection of the insured but for the protection of the public." *Davies v. Consol. Underwriters*, 199 La. 459, 476-77 (1942).

Notably, each of these cases involved an occurrence policy. Under an occurrence policy, coverage vests when the occurrence first happens regardless of when that occurrence is reported. *Anderson v. Ichinose*, 760 So. 2d 302, 305 (La. 9/8/99). Conversely, under a claims-made-and-reported policy, which is the type of policy at issue here, coverage vests when the insured both makes and reports a claim for the insured event. *Id*.

This distinction played a crucial role in the Louisiana Supreme Court's decision in *Gorman v. City of Opelousas*, 148 So. 3d 888 (La. 7/1/14).[17] In *Gorman*, the Louisiana Supreme Court noted that Louisiana appellate courts were "divided" on whether an insured's failure to timely notify an insurer foreclosed a direct action by the third party in a claims-made-and-reported policy. *Gorman*, 148 So. 3d at 894. The policy at issue was a claims-made-and-reported policy, meaning that coverage was not automatically triggered by the occurrence of an insured event. Instead, the insured event was the making and reporting of a claim within the policy

---

[17] Hargiss asserts that this Court found that *Gorman* and *United Home Care, Inc.* do not apply to this case and must not be considered. However, Hargiss misrepresents the Court's finding. That statement was clearly made in relation to whether PESLIC needed to demonstrate prejudice for an alleged breach of the cooperation clause. The Court made no holding in relation to the Direct Action Statute, and cases interpreting that statute, in its prior ruling. Certainly, those cases may have been inapposite for one issue, but it is possible they are binding for another.

period. *Id*. at 898. Because the policy was a claims-made-and-reported policy, the third party's rights did not vest at the time of her injury. *Id*. at 897. Finding that coverage vested at a time other than when the claim was made and reported "would effectively convert the … claims-made-and-reported policy into an occurrence policy, resulting in the judicial modification of the bargained-for exchange between the insurer and insured." *Id*.

Because the insured did not timely report the claim, coverage did not exist. *Id*. at 898. Absent that coverage, the third party "was not deprived of a right under the Direct Action Statute." *Id. See also Hood v. Cotter,* 5 So. 3d 819, 829-30 (La. 12/2/08) (finding that the denial of coverage did not unlawfully limit the rights of an injured third party because the Direct Action Statute "does not extend the protection of the liability policy to risks that were not covered by the policy"). In so finding, the court emphasized that the Direct Action Statute "does not extend any greater right to the injured third party who was damaged by the insured." *Gorman*, 148 So. at 897. *See also Resol. Tr. Corp v. Ayo,* 31 F.3d 285, 292 (5th Cir. 1994) (finding that that an insured's failure to comply with a notification provision in a claims-made policy barred a third party's claim); *F.D.I.C. v. Caplan*, 838 F. Supp. 1125, 1131 (W.D. La. 1993) (holding that "[a]n insured's failure to give adequate notice of claims under a claims-made policy therefore precludes the injured party's right of direct action"); *Ichinose*, 760 So. 2d at 307 ("No claim was made against either the insured or the insurer during the policy period, and the insured has no right to coverage under the terms of the policy. Under these circumstances, the Direct Action Statute does not extend any greater right to third party tort victims who were damaged by the insured").

None of these Louisiana Supreme Court cases directly address the issue here. Namely, where the insured made and reported the claim during the policy period, does the insured's

subsequent failure to abide by the cooperation clause bar a direct action by an injured third party?

The most analogous case is a Louisiana appellate court decision. *United Home Care, Inc.*, 351 So. 3d 904. In *United Home Care, Inc.*, the court analyzed the Direct Action Statute in the context of a claims-made-and-reported policy. *Id.* at 911. The *United Home Care, Inc.* court acknowledged the holding in *West*, *King*, and *Futch* but emphasized that "the overwhelming trend of the more recent jurisprudence has been to enforce cooperation clauses." [18] *United Home Care, Inc.*, 351 So. 3d at 911. The court found that *Gorman* best represented the modern approach to the Direct Action Statute and applied that same logic to the facts before it, noting that "the trigger that would activate coverage would be when [the insured] reported [the] claim to [the insurer], but this never occurred." *Id.* at 911-12. Accordingly, "[b]ecause of their failure to report to and refusal to cooperate … [the insureds] have no coverage under the policies." *Id.* at 912. Because the insureds were not covered under the policy, the third party, too, had no claim against the insurer. *Id.*

Facially, then, the *United Home Care, Inc.* court acknowledges a breach of the cooperation clause, but the court did not solely rely on that breach when precluding the third party's direct action against the insured. Rather, the court repeatedly emphasized that coverage did not vest because of the insured's failure to timely report the claim. It is unclear whether that court would reach a similar conclusion if the insured made and reported a claim during the policy

---

[18] The *United Home Care Inc.* court also emphasized that the Direct Action Statute was amended after *West*, and this amendment allowed the insurer to raise defenses against the third party. However, the Direct Action Statute analyzed by *Futch* similarly allowed the insurer to urge any defense that could be raised against the insured. Despite that language, the Louisiana Supreme Court found that *West* "effectively emasculated the statutory clause reserving the insured's right to assert all the defenses" and held that an insured's actions could not preclude a direct action by the injured third party. *Futch v. Fid. & Cas. Co. of New York*, 246 La. at 700, n. 3. Similarly, the *Gorman* court did not overrule *West* and its progeny and instead discussed the differences between the occurrence policies at issues in those cases and the claims-made-and-reported policy before it.

9

period but breached the cooperation clause. The Court will not read it to make such a holding, especially in light of the fact that the Louisiana Supreme Court has not reached a similar holding.

As such, this issue is a matter of first impression. "When making an *Erie*-guess in the absence of explicit guidance from the state courts, we must attempt to predict state law, not to create or modify it." *United Parcel Serv., Inc. v. Weben Indus., Inc.*, 794 F.2d 1005, 1008 (5th Cir. 1986). Ultimately, the Court finds that, in the absence of fraud and collusion, a breach of the cooperation clause in a claims-made-and-reported policy does not preclude a direct action by an injured third party so long as the insured made and reported a claim within the policy period.

Each of the Louisiana courts analyzing the Direct Action Statute heavily emphasized the moment a coverage triggering event occurred. For an occurrence policy, coverage vested when the insured event, such as an injury, occurred. Therefore, an injured third party's rights vested under the Direct Action Statute at the time of the occurrence of the insured event. An insured's failure to provide notice did not bar the claim because coverage already existed. The Direct Action Statute thus did not vest the third party with greater rights than the insured because the third party was not pursuing a claim that otherwise did not exist.

When Louisiana courts applied this same logic to claims-made-and-reported policy, they reached a different conclusion. In a claims-made-and-reported policy, the insured event was not the injury; the insured event was the making and reporting of a claim. Therefore, coverage did not vest until the insured made and reported the claim. To find that a third party could pursue a direct action where the insured did not make and report that claim would grant the third party greater rights than the insured. This is so because the third party would be able to create a claim where none existed in the first place. Where an event that triggers coverage does not occur

during the policy period, enforcing the notification provisions "does not deprive an injured third party of a right of action under the Direct Action Statute." *Gorman*, 148 So. 3d at 896.

However, this Court has already found that LSLEP made and reported the claim within the policy period. Therefore, the event triggering coverage occurred during the policy period. Because the insured event occurred, the third party's rights under the Direct Action Statute vested. Foreclosing Hargiss's claim would deprive him of his right of action, and this the Court will not do so.

Importantly, this finding does not grant Hargiss with greater rights than the insured. Because LSLEP made and reported the claim within the policy period, Hargiss is seeking to enforce a claim that vested. Clearly, then, Hargiss is not using the Direct Action Statute to enforce a claim that does not exist. Put differently, if LSLEP failed to make and report the claim, no claim would exist, and Hargiss would not be able to create a claim through the Direct Action Statute. However, because LSLEP made and reported the claim, that claim did exist, and Hargiss can now sue the insurer directly to recover on that claim.

This finding does not change the bargained-for exchange between the insured and the insurer or convert the policy into an occurrence policy. The Court is not extending coverage to events or risks that are not covered by the policy. The insured event is the making and reporting of a claim, and LSLEP properly made and reported the claim within the policy period. The Court is not expanding the scope of coverage by allowing Hargiss to make a claim against the insurer for the insured event.

In sum, Louisiana courts have repeatedly emphasized the importance of the coverage triggering event when determining whether a direct action by an injured party is foreclosed. When the coverage triggering event occurs, a third party's rights under the Direct Action Statute

11

vest. Here, the coverage triggering event occurred when LSLEP made and reported the claim. At that moment, Hargiss's claim under the Direct Action Statute vested. Subsequent actions by LSLEP do not affect Hargiss's rights to pursue that claim. Put more generally, in the absence of fraud and collusion, a third-party's claim under the Direct Action Statute is not foreclosed by a breach of the cooperation clause in a claims-made-and-reported policy so long as the insured properly made and reported the claim during the policy period. PESLIC has submitted no evidence indicating the existence of fraud and collusion nor does the Court find such evidence in its independent review of the factual record.

Accordingly, **IT IS ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Motion is **GRANTED** to the extent Hargiss seeks a judgment in his favor against PESLIC pursuant to the Direct Action Statute.

However, the Motion is **DENIED** to the extent Hargiss moves this Court to enter a judgment in Hargiss's favor "for $384,441.20, plus legal interest from October 21, 2021, subject to a credit of $100,000.00 on February 22, 2022."[19] As explained more fully in this Court's prior ruling, it is unclear what amount of the judgment is recoverable against PESLIC in light of the criminal act exclusion. An order requiring supplemental briefing on that issue shall follow this ruling.

### III.    CONCLUSION

For the reasons set forth above,

**IT IS ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Motion for Summary Judgment [Doc. No. 153] is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's Motion is **GRANTED** to the extent Hargiss seeks a judgment in his favor against

---

[19] [Doc. No. 153, p. 2].

PESLIC pursuant to La. R.S. § 22:1269. Plaintiff's Motion is **DENIED** to the extent Hargiss

moves this Court to enter a judgment in any specific amount.

MONROE, LOUISIANA, this 25th day of July 2024.

Terry A. Doughty
United States District Judge